IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| CARISA LEE NEIDER, | ) | CASE NO. 4:11CV00479 |
| | ) | |
| Plaintiff, | ) | JUDGE BENITA Y. PEARSON |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | KATHLEEN B. BURKE |
| MICHAEL J.ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Defendant. | ) | |

Plaintiff Carisa Lee Neider fka Wray[1] ("Neider") seeks judicial review of the final

decision of Defendant Commissioner of Social Security ("Commissioner") denying her

application for social security disability benefits.  Doc. 1.  This Court has jurisdiction pursuant to

42 U.S.C. § 405(g).  This matter has been referred to the undersigned Magistrate Judge for a

Report and Recommendation pursuant to Local Rule 72.2(b)(1).

For the reasons stated below, the Commissioner's decision should be **AFFIRMED**.

## I.  Procedural History

Neider filed her application for Supplemental Security Income Benefits ("SSI") on July

24, 2007.[2]  Tr. 15, 70, 117-123.  The application alleged a disability onset date of September 15,

2000.  Tr. 117.   Neider alleged disability based on spondylolysis, HBP, pancreatitis, gum

disease, depression, diabetes, back fusion surgery, migraines, arthritis in neck, arthritis in left

knee, bloodclot disorder, back problems, neuropathy and carpal tunnel syndrome.  Tr. 73, 79.

---

[1] As indicated in the transcript and in Plaintiff's brief, Plaintiff was formerly known as Carisa Lee Wray.  Doc. 13.

[2] The transcript contains inconsistent application filing dates.  The "Initial Disability Determination" reflects a July 24, 2007 filing date (Tr. 70), whereas, the "Application Summary for Supplemental Security Income" reflects an August 24, 2007 filing date (Tr. 117).  The ALJ determined that the application date was July 24, 2007 (Tr. 15) and Neider does not dispute this date.  Doc. 13, p. 1.

After initial denials by the state agency (Tr. 73-75, 79-81), Neider requested a hearing (Tr. 86), and an administrative hearing was held before Administrative Law Judge Ronald A. Marks ("ALJ") on July 13, 2009.  Tr. 30-69.

In his December 9, 2009, decision the ALJ determined that Neider had not been under a disability since July 24, 2007.  Tr. 22.  Neider requested review of the ALJ's decision by the Appeals Council on December 30, 2009.  Tr. Tr. 8-9.  On January 10, 2011, the Appeals Council denied Neider's request for review, making the ALJ's decision the final decision of the Commissioner.  Tr. 1-3.

## II. Evidence

### A.  Personal and Vocational Evidence

Neider was born on July 11, 1968, and was 39 years old at the time of her application. Tr. 117.  At the time of the hearing, she was married but going through a divorce (Tr. 45-46) and she was residing with her mother and brother.  Tr. 48.  Neider has no children.  Tr. 491.  She has a history of physical and sexual abuse.  Tr. 212-213, 492.  Neider did not complete high school, but eventually obtained her GED.  Tr. 272.   She also received training in Art from the ICS School of Art and completed training as a medical assistant at the Harding Business College.  Tr. 272.  She last worked in 1999.  Tr. 125-126, 161.

*Vocational Evaluation*

In early 2007, shortly before she filed her application for SSI, Neider participated in a vocational evaluation.  Tr. 266-275.   The evaluation was conducted in conjunction with a referral by the Ohio Bureau of Vocational Rehabilitation ("BVR").  Tr. 272.  Neider participated in five days of vocational/development and three days of job shadowing, the purpose of which was to evaluate Neider's overall interest, skills and aptitudes and to provide her with assistance

2

in determining her vocational direction.  Tr. 272.  Her attendance, punctuality and dependability were determined to be satisfactory for the duration of the program and there were no problems with her grooming, hygiene or work attire.  Tr. 272.  Various tests were conducted as part of the evaluation[3] and the Vocational Report sets forth observations regarding Neider's performance on those tests.[4]  Tr. 273-274.

The February, 2007, Vocational Rehabilitation Report ("Vocational Report"), which is based on Neider's own feedback following her job shadowing experience and on observations of Neider's physical capabilities, indicates that Neider should be limited to a sedentary type job with some freedom of mobility.  Tr. 272-273.  Further, considering Neider's back impairment and diabetes, jobs requiring prolonged standing, bending, stooping, and walking were not advised. Tr. 273.

The Vocational Report further indicates that, although Neider "appeared to display some naivete regarding the world of work and employer expectations and demands," she "was capable of expressing herself well."  Tr. 273.  Also, although Neider showed signs of distractibility

---

[3] The tests performed were: (1) TABE; (2) Standard Progressive Matrices (STM); (3) Revised Minnesota Paper Form Board Test (RMPFB); (4) SRA Computer Operator Aptitude Battery; (5) Minnesota Clerical Test (MCT); (6) Filing Personal Names; and (6) Office Proficiency Assessment and Certification (OPAC).  Tr. 273.

[4] Test results showed an 8.0 GE in reading comprehension. Tr. 274.  However, Neider showed "excellent spelling, written grammar skills, vocabulary, oral language usage and applied math skills."  Tr. 274.  Neider's visual abstract problem solving capabilities and abstract/visual-perceptual skills were superior.  Tr. 274.  Testing showed that Neider would have fair ability in occupations where perceiving detail in tabular material, observing differences in copies or proofreading words and numbers would be emphasized.  Tr. 274.  She exhibited "some inconsistency in accuracy and below average work pace on the Filing Personal Names work sample."  Tr. 274.  Neider indicated that she felt that distractions impacted her performance on the Filing Personal Names work sample.  Tr. 274.

Computer testing demonstrated that Neider had a "fair potential for consideration of training where applied computer principles would be emphasized."  Tr. 274.  More specifically regarding computer skills, OPAC testing showed that Neider "was able to perform quite well relative to several software applications and was capable of improving in areas where she had some difficulty."  Tr. 274.  Overall, the results showed promise in her capabilities to succeed in training in the areas consisting of computer, office and business activities.  Tr. 274.

A Vocational Research Interest Inventory showed Neider's occupational preferences to be consistent with the following clusters: Artistic, Plants/Animals, Industrial, Business Detail.  Tr. 274.  Within those areas, Neider reported a high interest in work that would involve dealing with people, operating a telephone, filing, record keeping and general office and computer work.  Tr. 274.

during the evaluation, she was capable of following instructions related to her assignments and she was capable of improving her overall work performance through repetition.  Tr. 273.

The following recommendations were made to Neider after her vocational evaluation: (1) she should make on-site visits to various vocational schools offering unit ward clerk training; (2) she should explore medical secretarial training due to the fact that she had expressed some interest in the area; (3) once she finalizes her career goal, she should be provided with training support necessary to achieve it; and (4) her long range vocational goals should include placement services to assist her in obtaining meaningful employment reflective of her newly developed skills.  Tr. 275.  It was also recommended that she abandon her interest in transcriptionist and medical record clerk training because of her physical limitations[5] and her need for more variety in her work.  Tr. 275.

Notwithstanding the foregoing evaluation and recommendations, on July 6, 2007, following a telephone conference with Neider in June 2007, wherein Neider reported that she was dealing with a number of physical problems and that she was considering applying for disability, the Rehabilitation Services Commission closed her case.  Tr. 268-270.  The reason listed for closure of her case was that "[y]ou [Neider] are currently unable to work or engage in training due to the severity of your disabilities."  Tr. 268-270.

## B.  Medical Evidence

### 1.      Physical Impairments

#### a.      Treating Medical Providers

##### *Clarence L. Wray, Jr,. D.C., Chiropractor*

---

[5] The Vocational Report does not identify specific physical limitations.

4

On April 29, 2008, Clarence L. Wray, Jr., D.C. ("Wray"),[6] a chiropractor, completed a "Medical Source Statement of Ability to do Work-Related Activities (Physical)."  Tr. 841-846. Tr. 21, 45.  Wray opined that Neider had numerous limitations including: only being able to sit for one hour, stand for 15 minutes, and walk for 30 minutes without interruption (Tr. 842); only being able to sit and walk for 3 hours and to stand for 2  hours in an 8 hour workday (Tr. 842); never being able to engage in reaching overhead, fingering or pushing/pulling (Tr. 843); never being able to operate foot controls with both the right and left foot (Tr. 843); and never being able to climb stairs, ramps, ladders or scaffolds, stoop, kneel, crouch or crawl.  Tr. 844. However, Wray also indicated that Neider does not require use of a cane to ambulate (Tr. 842) and he opined that Neider could perform all of the following activities:

- Shopping;

- Travel without a companion for assistance;

- Ambulate without using a wheelchair, walker, or 2 canes or 2 crutches;

- Walk a block at a reasonable pace on rough or uneven surfaces;

- Use standard public transportation;

- Slowly climb a few steps at a reasonable pace with the use of a single hand rail;

- Prepare a simple meal and feed herself;

- Care for her personal hygiene; and

- Sort, handle and use paper or files.

Tr. 846.

---

[6] Neider testified that Wray is related to her husband whom she was separated from at the time of the hearing.  Tr. 21, 45.

### _Ray Vallabhaneni, M.D._

On April 23, 2009, Neider was admitted to St. Elizabeth Health Center for a myocardial infarction.  Tr. 667.  Ray Vallabhaneni, M.D. ("Vallabhaneni"), cardiologist, performed an emergent cardiac catheterization and successful balloon angioplasty with stent placement.  Tr. 668, 681-684.  On April 25, 2009, her discharge date, Neider "was free of any chest pain or shortness of breath and was anxious for discharge."  Tr. 668.

Thereafter, following his follow up examination of Neider on May 14, 2009 (Tr. 747-750), Vallabhaneni completed a physical functional capacity assessment.  Tr. 833-834.  He indicated that Neider's standing/walking, sitting, and lifting/carrying were not affected.  Tr. 834.  Further, he indicated that the following functions were not significantly limited: pushing/pulling, bending, reaching, handling, repetitive foot movements, seeing, hearing and speaking.  Tr. 834.  "After taking the appropriate history and performing the relevant physical examination," Vallabhaneni opined Neider to be employable.  Tr. 834.

### _Christian Carbonell DPM_

Christian Carbonell DPM ("Carbonell"), a podiatrist, reported first having seen Neider on June 14, 2007, and last having seen her on August 28, 2007.  Tr. 297.  He saw Neider for diabetic neuropathy.  Tr. 265.  He completed a report for the Bureau of Disability in which he indicated that Neider's condition caused pain in her feet and limited her ability to stand/walk for extended periods at a time.  Tr. 296-298.

### *Theresa Marx-Armille, M.D.*

On June 14, 2007, Theresa Marx-Armille, M.D. ("Marx-Armille"), an endocrinologist who treated Neider, provided a note indicating that Neider "has very poorly controlled type 2 diabetes insulin requiring . . . hypertension + depression.  I [Marx-Armille] believe she has an eating disorder + binge eats/overeats when upset/stressed.  She does well with diet/meds until she gets stressed."  Tr. 265.  The note was prompted by a telephone call from Neider wherein she requested a "letter" about her diabetes and depression for use in her disability application and asked that the doctor mention in the "letter" that "depression is causing eating disorder."  Tr. 551.

### *Richard J. Marina, M.D.*

On June 18, 2008, and July 8, 2008, Richard J. Marina, M.D. ("Marina") indicated in letters to Dr. Andrew J. Lockshaw, III, D.O., one of Neider's doctors, that Neider had been diagnosed with irritable bowel syndrome and perhaps bowel disturbance related to diabetes.  Tr. 771.  He noted that endoscopic evaluation was not necessary at the time (Tr. 772-772) and that Neider was better with Metamucil to a significant degree.  Tr. 771.

### *Michael Stanich, D.O.*

On October 30, 2007, Michael Stanich, D.O. ("Stanich") performed arthroscopic surgery and a partial lateral meniscectomy on Neider's left knee.  Tr. 477.  On March 5, 2008, Stanich's office notes indicate that Neider was doing well with her knee.  Tr. 544.  Her range of motion was improving and the pain was decreasing.  Tr. 544.  On December 17, 2008, she saw Stanich and reported some on-and-off problems with her left knee.  Tr. 783.  Neider indicated that, when

she was on Lodine, she was doing better but she was out of that medicine.  Tr. 783.  Stanich

placed her back on Lodine.  Tr. 783.  On June 22, 2009, Stanich administered an injection into

her left knee to address symptoms.  Tr. 848.  She was seen again a month later and office notes

from July 20, 2009, indicate that Neider had made progress with her knee.  Tr. 847.

b.    **State Agency Reviewing Physicians**

**_Jeffrey Vasiloff, M.D._**

On November 27, 2007, Jeffrey Vasiloff, M.D. ("Vasiloff") completed a Physical RFC

Assessment.  Tr. 513-520.  Vasiloff opined that Neider could: occasionally lift and/or carry 20

pounds; frequently lift and/or carry 10 pounds; stand and/or walk about 6 hours in an 8 hour

workday; sit about 6 hours in an 8 hour workday; and had no limitations relative to pushing

and/or pulling, other than as indicated for lift and/or carry.  Tr. 514.  Vasiloff opined that Neider

should never climb ladders/ropes/scaffolds but that she could occasionally climb ramps/stairs,

stoop, kneel, crouch and crawl.  Tr. 515.  Vasiloff opined that Neider had no manipulative,

visual, communicative or environmental limitations.  Tr. 516.  He indicated that Neider's

allegations as to the severity of her symptoms generally were mostly credible in nature, but not

in severity.  Tr. 518.

**_Myung Cho, M.D._**

On July 1, 2008, Myung Cho, M.D. ("Cho") also completed a Physical RFC Assessment.

Tr.594- 601.  Cho opined that Neider could: occasionally lift and/or carry 20 pounds; frequently

lift and/or carry 10 pounds; stand and/or walk about 6 hours in an 8 hour workday; sit about 6

hours in an 8 hour workday; and had push/pull limitations in her upper extremities.  Tr. 595.

Cho opined that Neider should never climb ladders/ropes/scaffolds but that she could

occasionally climb ramps/stairs, balance, stoop, kneel, crouch and crawl.  Tr. 596.   Cho opined

8

that Neider had no limitations in reaching in all directions (including overhead) but that she was limited in handling (gross manipulation), fingering (fine manipulation) and feeling (skin receptors) due to neuropathy and CTS.[7]  Tr. 597.  Cho opined that Neider had no visual, communicative or environmental limitations.  Tr. 597-598.  He indicated that Neider's statements were partially credible and that objective medical evidence did not support limitations to the degree that Neider reported.  Tr. 599.

### 2. Mental Impairments

#### a. Treating Medical Providers

#### *Canfield Counseling Clinic*

Alice Newman ("Newman"), a licensed professional clinical counselor, first treated Neider on December 27, 2007, and last treated her on March 19, 2008.  Tr. 557.  On March 19, 2008, Newman completed a Mental Status Questionnaire.  Tr. 556-559.

Newman noted that Neider's appearance was appropriate for office visits.  Tr. 557.  Newman's observations of Neider included findings that Neider rambles, easily gets off subject, is irritable, has difficulty concentrating, suffers from moderate/severe depression and anxiety, is tearful, is focused on her health issues, and her health issues, including pain, impact her ability to maintain concentration and attention, persist at tasks, socialize, and adapt depending on the level of pain.  Tr. 557-559.  Newman did not offer an opinion in response to the question "[h]ow would the patient react to the pressures, in work settings or elsewhere, involved in simple and routine, or repetitive tasks?" Tr. 558.

---

[7] Cho did not indicate what the abbreviation "CTS" means.  However, the Court interprets the reference to CTS to be a reference to carpal tunnel syndrome.

Also, on January 29, 2008, approximately one month after having first seen Neider, John J. Allan ("Allan"), licensed professional clinical counselor, completed a "Medical Assessment of Ability to do Work-Related Activities" report and an "Adult Mental Status" report.[8]  Tr. 536-541.  Newman countersigned Allan's report as supervising psychologist.  Tr. 540, 541.

The Medical Assessment report includes the following assessments in the areas of: (1) making occupational adjustments; (2) making performance adjustments; and (3) making personal social adjustments.  Tr. 538-539.

- In the first area, "making occupational adjustments," Allan opined that: Neider's ability to function independently was "good[9];" her ability to follow work rules, use judgment and maintain attention/concentration was "fair[10];" and her ability to relate to co-workers, deal with the public, interact with supervisors, and deal with work stresses was "poor or none.[11]"  Tr. 538.

- In the second area, "making performance adjustments," Allan opined that Neider's ability to understand, remember and carry out complex job instructions and her ability to understand, remember and carry out simple job instructions was "poor or none."  Tr. 539.  However, Allan also opined that Neider's ability to understand, remember and carry out detailed, but not complex, job instructions was "fair."  Tr. 539.

- In the third area, "making personal social adjustments," Allan opined that Neider's ability to maintain her personal appearance was "good."  Tr. 539.  However, Allan opined that her ability to behave in an emotionally stable manner, relate predictably in social situations, and demonstrate reliability was "poor or none."  Tr. 539.

The Mental Status report rated Neider in the following functional categories: (1) cognitive processing; (2) emotional functioning; (3) behavior/interpersonal functioning; (4)

---

[8] On March 19, 2008, Allan completed a "Daily Activities Questionnaire."  Tr. 560-561.

[9] "Good" is defined as "ability to function in this area is limited but satisfactory."  Tr. 538.

[10] "Fair" is defined as "ability to function in this area is seriously limited, but not precluded."  Tr. 538.

[11] "Poor or None" is defined as "no useful ability to function in this area."  Tr. 538.

psycho-physiological; and (5) ideation.  Tr. 541.  The rating choices were *not impaired*, *level of*

*impairment – mild, moderate or severe*, or *not assessed*. Tr. 541.

- In the "cognitive processing" category, Allan rated the areas of orientation, comprehension, insight, judgment and reality testing as not impaired.  Tr. 541.  Allan rated Neider's memory (both short and long term) as only mildly impaired, and her attention/concentration as moderately impaired.  Tr. 541.

- In the "emotional functioning" category, Allan rated Neider's guilt as not impaired. Tr. 541.  Allan rated her anger as mildly impaired; her affective expression as moderately impaired and noted she was "flat, tearful;" and her anxiety and depression as severely impaired.  Tr. 541.

- In the "behavior/interpersonal functioning" category, Allan rated Neider as having no impairments in psychomotor activity, cooperative/motivated, and grooming/hygiene.  Tr. 541.  He rated her personality traits, impulse control and social skills as severely impaired.  Tr. 541.  Regarding the personality traits rating, Allan noted that Neider has a dependent personality disorder and, regarding the impulse control rating, he noted that Neider has an eating disorder.  Tr. 541.

- In the "psycho-physiological" category, Allan rated Neider's sleep as not impaired, but her appetite and psychosomatic disturbance as severely impaired.  Tr. 541.  When rating her psychosomatic disturbance, Allan indicated that Neider has chronic back pain and neck pain.  Tr. 541.

- In the "ideation" category, Allan rated Neider as having a mild impairment in the suicidal/homicidal area, and noted that she has "[t]houghts," "[n]o plan," "[w]ishes at times she were dead."  Tr. 541.  Allan also indicated that Neider has severely impaired thought processes[12] and self-esteem.  Tr. 541.

      b.    **Consultative Examiners**

### *Donald Degli, M.A. Psychologist*

On November 5, 2007, Neider was evaluated by psychologist Donald Degli ("Degli").

Tr. 491-494.  Degli's report indicates that Neider presented herself in distress at the exam,

ambulating with a cane, and having had recent arthroscopic surgery of her knee.  Tr. 491.  Her

---

[12] Regarding her impaired thought processes, Allan notes that Neider has OCD.  Tr. 541.  However, Allan does not describe or define his reference to OCD.

hair was appropriately groomed.  Tr. 491.  Degli noted that Neider was easy to engage and relevant as a historian (Tr. 491); has held gainful employment (Tr. 492) and has not been antisocial, self-destructive or aggressive; "[a]t worst she is personally and vocationally directionless."  Tr. 492.  Degli characterized Neider's insight and judgment as adequate and opined that Neider's ability to obtain her GED showed near average intelligence. Tr. 493.

While Degli noted that Neider was tearful at times as she discussed her situation, he found her flow of conversation and thought to be adequate, and indicated that she was able to focus on all aspects of the evaluation, even those that were somewhat intrusive.  Tr. 492-493. After hearing from Neider regarding past sexual abuse by her father, her marital issues, her mother's health problems and her own health problems, Degli opined that it was clear that she was depressed.  Tr. 492. However, he indicated that she did not evidence severe anxiety or post traumatic stress disorder and there was no evidence of psychotic symptoms.  Tr. 492.

Degli noted that Neider's daily living activities included spending time at home watching television and reading autobiographies and self-help books.  Tr. 494.  She reported shopping infrequently and occasionally walking to the park.  Tr. 494.  Neider reported having a driver's license and driving short distances in the community.  Tr. 494.

In his summary, Degli opined that Neider has adequate general intelligence but is struggling with major depression.  Tr. 493.  Degli rated Neider has having a GAF of 45.[13]  Tr. 493.  In his discussion regarding the "Four Work-Related Mental Abilities," Degli opined that: (1) Neider could meet basic interaction demands with peers, supervisors or the adult public in a

---

[13] GAF considers psychological, social and occupational functioning on a hypothetical continuum of mental health illnesses.  *See* American Psychiatric Association: *Diagnostic & Statistical Manual of Mental Health Disorders*, Fourth Edition, Text Revision.  Washington, DC, American Psychiatric Association, 2000 ("DSM-IV-TR"), at 34. A GAF score between 41 and 50 indicates "serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g., few friends, unable to keep a job)."  *Id.*

mildly competitive work setting; (2) Neider had the ability to understand, remember and follow directions and do routine tasks in a competitive workplace, but her ability to do so for meaningful periods was at that time questionable; (3) Neider's ability to maintain attention, concentration, persistence and pace in a competitive work setting was severely impaired; and (4) Neider's ability to withstand the stresses and pressures of a competitive workplace was severely impaired. Tr. 494. He further opined that Neider has the ability and judgment to manage money matters appropriately. Tr. 494.

Degli concluded his report by opining Neider was "severely impaired in her ability to meet the demands of competitive adult employment." Tr. 494. He noted that his opinion related solely to her psychological status without regard to physical limitations. Tr. 494.

### *Chander Mohan, M.D.*

Following the administrative hearing, on August 25, 2009, psychiatrist Chander Mohan, M.D. ("Mohan") evaluated Neider at the request of the Bureau of Disability and completed a report of his evaluation. Tr. 855-860. Also, on September 30, 2009, Mohan completed a "Medical Source Statement of Ability to do Work-Related Activities." Tr. 853-854.

Mohan indicated that Neider was sad, anxious and tearful. Tr. 857-858. Her speech was clear and understandable and insight and judgment were adequate. Tr. 857-858. Mohan stated that Neider's desire not to be around people could be due to her depression, weight and physical problems. Tr. 858.

In his discussion regarding the "Four Work-Related Mental Abilities," Mohan opined that: (1) Neider's history demonstrates marked impairments in relating to others, including fellow workers and supervisors (Mohan noted that Neider was cooperative during the interview but was very tearful and sad); (2) Neider's ability to understand and follow directions was not

13

impaired; (3) Neider is of average intelligence and a good historian, and her ability to maintain attention and perform simple tasks was not impaired; and (4) Neider's ability to withstand the stress and pressures associated with day to day work activity was markedly impaired because she is withdrawn, distressed and tearful.  Tr. 858-859.

Mohan's Medical Source Statement indicates that Neider had no limitations in her ability to: understand and remember simple instructions; carry out simple instruction; and make judgments on simple work-related decisions. Tr. 852.  However, Mohan, in the same Medical Source Statement, Mohan indicates that, as to complex instructions and decisions, Neider had limitations: specifically, her ability to understand, remember and carry out complex instructions was markedly impaired, and her ability to make judgments on complex work-related decisions was extremely impaired.  Tr. 852.

Mohan's Medical Source Statement also includes opinions regarding Neider's ability to interact with others.  Tr. 853.  He opined that Neider's ability to interact appropriately with the public, supervisors and co-workers was only mildly impaired.  Tr. 853.  However, he opined that Neider's ability to respond appropriated to usual work situations and to changes in a routine work setting was markedly impaired.  Tr. 853.  Mohan more specifically indicated that Neider "is able to interact with the public and supervisors, but she is not able to so for long periods of time.  She is fragile."  Tr. 853.

c.     **State Agency Reviewing Physicians**

***Joan Williams, Ph.D***[14]

On November 24, 2007, Joan Williams, Ph.D. ("Williams") completed a Mental RFC and
Psychiatric Review Technique.  Tr. 495-512.  She reviewed Neider's alleged impairments under
Listing 12.04 – Affective Disorders – and determined that her impairment did not satisfy the
diagnostic criteria but did find that Neider suffered from recurrent major depression.  Tr. 498.
She found mild limitations in activities of daily living; moderate limitations in maintaining social
functioning and in maintaining concentration, persistence or pace; and no episodes of
decompensation, of an extended duration.  Tr. 505.

In her Mental RFC, Williams did not find any marked limitations.  Tr. 509.   Williams
found moderate limitations in only four areas: namely, ability to maintain attention and
concentration for extended periods; ability to work in coordination with or proximity to others
without being distracted by them; ability to complete a normal workday and workweek without
interruptions from psychologically based symptoms and to perform at a consistent pace without
an unreasonable number and length of rest periods; and ability to respond appropriately to
changes in the work setting.  Tr. 509-510.  In the other sixteen areas, Williams found either no
evidence of limitation or that Neider was not significantly limited.  Tr. 509-510.  Williams gave
weight to the psychological consultative examiner's report because it was an approved
psychological source, but felt that emphasis placed on the consultative examiner's report should
be reduced because the consultative examiner's report differs from the BVR evidence and the
BVR evidence was based on extensive observation whereas the consultative examiner's report

---

[14] On April 11, 2008, Caroline Lewin, Ph.D., reviewed Williams' November 24, 2007, reports and affirmed those
reports as written.  Tr. 587.

was based on a one-time exam.  Tr. 511. Williams opined that Neider has the capacity to perform simple work tasks, social exchanges and adjustments.  Tr. 511.

### C.  Testimonial Evidence

#### 1.      Neider's Testimony

Neider was represented by counsel and testified at the July 13, 2009, hearing.  Tr. 34-61. She testified regarding her physical and mental ailments and capabilities; her living arrangements, which included a second floor bedroom; her ability to care for her cat with some assistance from her brother; the fact that her driver's license was issued without restrictions; her daily living activities, including light reading, light shopping, dressing herself and taking care of her own personal hygiene, except for occasional assistance with washing her hair; her myocardial infarction; her knee and back problems; the fact that, although she did have to have cortisone shot in her knee, she only takes extra-strength Tylenol for pain; her neuropathy down her legs to her feet and the sharp pain in her leg; her depression, on and off crying spells, and seven to eight really bad days each month; her abuse as a child; her lack of knowledge regarding weights and measurements; her use of a cane; and her ability to count change.  Tr. 34-61.

#### 2.      Vocational Expert's Testimony

Vocational Expert Charles Cone, Ph.D.  ("VE") testified at the hearing.  Tr. 61-64.  The ALJ posed two hypotheticals to the VE, and asked the VE whether there would be any jobs available to an individual in the national and regional economy based on the hypotheticals presented.  Tr. 62-64.  The first hypothetical presented to the VE was as follows:

> I want you to assume an individual, like this claimant, with the same age, education and work experience that has the residual functional capacity for light work, as that term is defined in the regulations.  This individual can never use any ladders, ropes or scaffolds, not do any balancing or crawling.  Cannot use any foot controls on the left.   Must avoid moderate exposure to extreme cold, heat, wetness, humidity, fumes, odors, dust, gases.  Must avoid workplace hazards.  Is

precluded from occupational driving.  This individual is further limited to simple one, two step routine procedures, with limited and superficial interaction with supervisors, coworkers, and the public.

Tr. 62.  The VE testified that yes, there were jobs available in the national and regional economy and his examples included: light packing, light assembly and light inspector.  Tr. 63.

The second hypothetical presented to the VE was as follows:

I next want you to assume an individual like this claimant, are the same education, age, and work experience that has a residual functional capacity for sedentary work.  This individual cannot use any ladders, ropes or scaffolds, and no balancing, cannot do any stooping or crawling.  Cannot do any work above the shoulder level, no repetitive reaching with the right and left arm.  This individual's handling, fingering ability is limited to occasional on both hands, on this right hand dominant individual.  No foot controls in the right and the left. Must avoid exposure to extreme cold, heat, wetness, humidity, fumes, odors, dust, gases and poorly ventilated areas, and workplace hazards. This individual is limited to simple one, two step routine procedures, must be non-public, no interaction with coworkers, must avoid sudden changes of any kind, only have superficial interaction with supervisors.  In the location where this individual is employed, must have a flat surface, not stairs.

Tr. 63.  The VE testified that there would be no jobs available in the national or local economy for such an individual.  Tr. 63.  Claimant's counsel indicated that she did not have any questions for the VE.  Tr. 63-64.

### III. Standard for Disability

Under the Act, 42 U.S.C § 423(a), eligibility for benefit payments depends on the existence of a disability.  "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  Furthermore:

[A]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work

experience, engage in any other kind of substantial gainful work which exists in the national economy . . . .

42 U.S.C. § 423(d)(2).

In making a determination as to disability under this definition, an ALJ is required to follow a five-step sequential analysis set out in agency regulations.  The five steps can be summarized as follows:

1.  If the claimant is doing substantial gainful activity, he is not disabled.

2.  If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.

3.  If claimant is not doing substantial gainful activity, is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

4.  If the impairment does not meet or equal a listed impairment, the ALJ must assess the claimant's residual functional capacity and use it to determine if claimant's impairment prevents him from doing past relevant work.  If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

5.  If claimant is unable to perform past relevant work, he is not disabled if, based on his vocational factors and residual functional capacity, he is capable of performing other work that exists in significant numbers in the national economy.

20 C.F.R. §§ 404.1520, 416.920; *see also Bowen v. Yuckert*, 482 U.S. 137, 140-42, 96 L. Ed. 2d 119, 107 S. Ct. 2287 (1987).  Under this sequential analysis, the claimant has the burden of proof at Steps One through Four.  *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). The burden shifts to the Commissioner at Step Five to establish whether the claimant has the Residual Functional Capacity ("RFC") and vocational factors to perform work available in the national economy.  *Id.*

18

## IV. The ALJ's Decision

In his December 10, 2009, decision, the ALJ determined that Neider had not been under a disability since July 24, 2007, the date the application was filed.  Tr. 22.  The ALJ reviewed the record, heard testimony and found that:

1.      Neider had not engaged in substantial gainful activity since July 24, 2007.  Tr. 15.

2.      Neider had the following severe impairments:  status post lumbar fusion surgery, knee problems, depression, diabetes, neuropathy, carpal tunnel syndrome, status post myocardial infarction, post traumatic stress disorder (PTSD), depression and obesity.  Tr. 15.

3.      Neider did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments.[15]  Tr. 15-17.  In reviewing the listings, the ALJ assessed Neider's back impairment, diabetes, neuropathy, carpal tunnel, heart problems, obesity and mental impairments.  Tr. 15-17.  The ALJ specifically referred to the following Listings: 9.08, 11.14, 1.0, 4.04, 12.04 and 12.05.  Tr. 15-17.

4.      Neider had the residual functional capacity ("RFC") to perform light work except that: she was unable to use ladders, ropes, scaffolds; she could not balance or crawl; she was unable to use foot controls with her left foot; she should avoid moderate exposure to extreme cold, heat, wetness, humidity, fumes, dust and gases; she had to avoid workplace hazards and was precluded from operational driving; she was limited to simple, one to two step, routine tasks and no more than occasional contact with supervisors, co-workers, and the general public.  Tr. 17-21.

5.      Neider had no past relevant work; she was born on July 11, 1968, and was 39 years old, defined as a younger individual age 18-49, on the date the application was filed.  Tr. 21.

6.      Neider had at least a high school education and was able to communicate in English.  Tr. 21.

---

[15] The Listing of Impairments (commonly referred to as Listing or Listings) is found in 20 C.F.R. pt. 404, Subpt. P, App. 1, and describes impairments for each of the major body systems that the Social Security Administration considers to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience.  20 C.F.R. § 404.1525.

7.      Transferability of job skills was not an issue because Neider did not have past relevant work.  Tr. 21.

8.      Considering Neider's age, education, work experience and RFC, there are jobs in that exist in significant numbers in the national economy that Neider can perform, specifically: packer, assembler and inspector.  Tr. 21-22.

## V. Parties' Arguments

### A.      Plaintiff's Arguments

Neider presents five issues for this Court's review.  Doc. 13, p. 1.  She asserts that:

1.      The ALJ erred by not giving substantial deference to the opinions of her treating and consultative psychologists and psychiatrist.  Doc. 13, p. 1, 15-18.

2.      The ALJ failed to consider the following impairments as severe: chronic pain, stenosis and vascular sufficiency.  Doc. 13, p. 1, 18.

3.      The VE's testimony is based on an incomplete hypothetical question posed by the ALJ and, therefore, the VE's opinion testimony is not evidence upon which the ALJ may rely. Doc. 13, p. 1, 18-19.

4.      The ALJ erred by not calling a medical expert to testify regarding whether Neider's impairments equaled any of the listings including the effect of end organ damage. Doc. 13, p. 1, 19-20.

5.      The ALJ's decision was not based on substantial evidence. Doc. 13, p. 1, 20.

### B.      Defendant's Arguments

The Commissioner argues that:

1.      Substantial evidence supports the ALJ's decision that Neider is not disabled.  Doc. 15, p. 11-13.

2.      The ALJ was not required to accept all treating and examining sources.  Doc. 15, p. 13-16.

3.      The ALJ properly assessed Neider's credibility.  Doc. 15, p. 17-18.

4.      The ALJ did not err at Step Two.  Doc. 15, p. 18-19.

5.	The hypothetical questions were appropriate.  Doc. 15, p. 19.

6.	The ALJ was not required to call a medical expert.  Doc. 15, p. 19-20.

## VI. Law & Analysis

A reviewing court must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record.  42 U.S.C. § 405(g); *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003).  "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992).

The Commissioner's findings "as to any fact if supported by substantial evidence shall be conclusive." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citing 42 U.S.C. § 405(g).  Even if substantial evidence or, indeed, a preponderance of the evidence supports a claimant's position, a reviewing court cannot overturn the Commissioner's decision "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003).  Accordingly, a court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

**A.	The weight given by the ALJ to the medical opinions was proper and is supported by substantial evidence.**

Neider asserts that the ALJ did not provide appropriate weight to the medical opinions of Degli and Mohan.  Doc. 13, p. 15-18.  Degli and Mohan were one-time consulting examining sources rather than treating physicians. Tr. 491-494, 853-860.  As such, their opinions are not entitled to controlling weight.  *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994).  Even

though the opinions are not entitled to controlling weight, the ALJ considered each of the opinions and weighed them in accordance with the applicable regulations. Tr. 19-20.  *See* 20 C.F.R. § 416.927.  As more fully discussed *infra*, the ALJ's conclusions regarding these opinions are supported by substantial evidence and therefore should not be overturned.  *See Besaw*, 966 F.2d at 1030; *Jones*, 336 F.3d at 477.

### 1.  Degli

The ALJ gave little weight to Degli's 2007 consultative examination opinion that Neider's ability to maintain attention, concentration, persistence, and pace and to withstand the stress and pressure of work was severely impaired.  Tr. 19.  The ALJ concluded that Degli's opinion was not supported by the exam findings.  Tr. 19.  For example, although Degli noted that Neider was tearful and distressed during the interview, he also indicated that Neider had no problems maintaining focus.  Tr. 19, 493.  Also, notwithstanding his opinion that Neider was markedly impaired in certain areas, Degli opined that Neider's insight and judgment were adequate and he listed a wide range of daily activities that Neider performed, including reading autobiographies and self-help books.  Tr. 19, 493.

Further, based on his personal observations of Neider, the ALJ determined that, although she was tearful and distressed at times, she was capable of responding clearly and concisely without difficulty.  Tr. 19.  As required by 20 C.F.R. § 416.927(c), the ALJ considered Degli's opinion.  After considering factors set forth in the Regulations, including supportability of the opinion with the relevant medical evidence and consistency of the opinion with the record as a whole, the ALJ concluded that little weight should be given to Degli's opinion.  *Id.*  This decision is supported by substantial evidence and therefore is not a basis for remand.

### 2.  Mohan

The ALJ gave little weight to Mohan's 2009 consultative examination opinions because the ALJ found that the opinions were "highly contradictory." Tr. 20.  Mohan opined that Neider's ability to complete complex instructions was markedly impaired yet, on the same form, he opined that she had <u>no</u> impairment in her ability to understand and carry out simple instructions.  Tr. 20, 852.  Elsewhere in his report, Mohan opined that Neider's "mental ability to understand and follow instructions is not impaired." Tr. 20, 852, 858.  Mohan opined that Neider would only have mild problems interacting with the public and supervisors (but should not do so for extended periods) (Tr. 20, 853) yet, later, he indicated that she would have marked impairments in relating to others.  Tr. 20, 858.  Although Mohan opined that Neider's ability to withstand stress and pressures associated with work was markedly impaired because she was withdrawn, distressed and tearful (Tr. 20, 859), he also indicated that she was able to care for her mother, prepare simple meals, and attend doctor's appointments.  Tr. 20, 857.  Mohan noted that Neider was cooperative with him during the interview.  Tr. 20, 858.

As required by 20 C.F.R. § 416.927(c), the ALJ considered Mohan's opinion using the factors set forth in the Regulations, including consistency of the opinion with the record as a whole,  and concluded that he should give little weight to the opinion.  *Id.*  This decision is supported by substantial evidence and therefore is not a basis for remand.

### 3.  Other medical opinions

Neider makes a generalized statement suggesting that the ALJ did not properly weigh other opinions, including that of Newman, a treating counselor at Canfield Counseling Clinic, but she fails to develop this argument.  Doc. 13, p. 18.  "[I]ssues averted to in a perfunctory

manner, unaccompanied by some effort at developed argumentation, are deemed waived."
*McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997). "It is not sufficient for a party to
mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its
bones." *Id.*; *Meridia Prods. Liab. Litig. v. Abbott Labs.*, 447 F.3d 861, 868 (6th Cir. 2006); *see
also Ehrhart v. Sec'y of Health & Human Servs.*, 969 F.2d 534, 537 n. 5 (7th Cir. 1992)
(applying waiver rule because judges need not devote time to "discussion of argument, raised if
at all, 'in a very opaque manner.'"). Since Neider failed to develop this argument, the Court is
not required to speculate as to the basis of Neider's argument regarding the weight the ALJ
provided to other medical opinions. This argument is waived.

Even if Neider's arguments relative to the other opinion evidence were not waived, the
ALJ did properly consider and explain the weight he gave to the opinion evidence of claimant's
cardiologist, counselor, podiatrist, chiropractor and the state agency reviewing psychologists and
physicians.[16] Tr. 18, 20-21. As to Neider's counselors, the ALJ determined that Allan's opinions
were entitled to little weight because he had only seen Neider for one month before submitting
his opinions and the report contained inconsistencies. Tr. 20. The ALJ also noted that the report
was signed by a licensed professional counselor, not a psychologist or psychiatrist. Tr. 20.
Although Newman completed a "Mental Status Report," she did not offer an opinion regarding
how Neider would react to pressures involved in simple and routine or repetitive tasks and did
not provide any opinion as to the degree of limitation or restriction, if any, that Neider's mental
health had on her ability to work. Tr. 557-558.

---

[16] The ALJ also considered the Ohio Bureau of Vocational Rehabilitation's report and the submission from Neider's
mother and explained the extent to which he considered such information. Tr. 21.

For the foregoing reasons, Neider's arguments that the ALJ erred by not giving substantial deference to the opinions of Neider's treating and consultative psychologists and psychiatrists are without merit and/or are waived.

**B.      The ALJ properly assessed Neider's credibility.**

Included within her argument that the ALJ did not provide proper weight to the opinions of psychologist Degli and psychiatrist Mohan, Neider asserts that the "ALJ did not weigh the credibility of the testimony properly in light of the psychological and psychiatric evidence of record as per Social Security Ruling 96-7p." Doc. 13, p. 18.  Social Security Ruling 96-7p, 1996 SSR LEXIS 4, addresses assessing the credibility of an individual's statements.  When assessing credibility, the ALJ "must consider the entire case record, including objective medical evidence, the individual's own statements about symptoms, statements and other information provided by treating or examining physicians or psychologists and other persons about how they affect the individual, and any other relevant evidence in the case record."  SSR 96-7p, 1996 SSR LEXIS 4, *2-3.  The ALJ did consider the entire case record and conducted a thorough credibility analysis. Tr. 17-20.  Although Neider complained of chronic pain resulting from a variety of medical conditions including back and neck problems, diabetes, neuropathy, carpal tunnel syndrome and knee problems, the ALJ found that her statements regarding the intensity, persistence and limiting effects of the symptoms were not credible to the extent that that they were inconsistent with the RFC determined by the ALJ.  Tr. 17-20.

The ALJ's credibility determination regarding Neider's complaints of pain is supported by his review and findings of the medical evidence and his own observations of her.  Tr. 17-20. Although Neider complained of back and knee pain, the ALJ determined that the medical evidence shows that Neider's left knee pain and back pain greatly improved with surgery.  Tr.

25

19.  Specifically, in 2008, Neider reported that, following her 2006 surgery, her pain had improved by at least 60-70% and she no longer had radiating pain.  Tr. 566.  Also, following her October 30, 2007, left knee surgery, on March 5, 2008, Dr. Stanich reported that Neider was doing well with her knee, her range of motion was improving, and her pain was decreasing.  Tr. 477, 544.  A June 2009 x-ray of Neider's right knee showed minimal osteoarthrosis in the knee joint.  Tr. 826.

The ALJ determined that, although Neider's diabetes has remained difficult to control, endrocrinology examinations have consistently shown intact sensation and reflexes in her feet.  Tr. 19; 620-629; 760-765.

Neider testified that she suffers from severe depression.  However, the ALJ found that Neider received limited mental health treatment for her mental health issues.  Tr. 19.  The ALJ personally observed Neider during the hearing and determined that, while she was tearful and distressed at various times, she answered both his and her counsel's questions clearly and concisely.  Tr. 19.  Likewise, the ALJ noted that Degli's report indicated that, although Neider was tearful and distressed during his examination of her, she remained focused during the interview.  Tr. 19; 493.

For the foregoing reasons, the ALJ properly assessed Neider's credibility.

**C.    The ALJ's determination at Step Two, which did not find Neider's chronic pain, stenosis and vascular insufficiency to be severe, was not error.**

Without any specific reference to the record to support her argument, Neider asserts that the ALJ's failure to find chronic pain, stenosis and vascular insufficiency to be severe impairments was error.  Doc. 13, p. 18.  The burden of proof at Step Two of the sequential analysis remains with Neider.  *Walters*, 127 F.3d at 529.  Neider has failed to provide this Court with a basis for finding that the ALJ erred at Step Two.  As noted above, "issues averted to in a

26

perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." *McPherson*, 125 F.3d at 995–96.  Inasmuch as Neider has failed to develop her argument with regard to the ALJ's Step Two finding this issue is also deemed waived.

Furthermore, even if this issue has not been waived, the ALJ did find that Neider suffered from severe mental impairments at Step Two[17] and he therefore proceeded with subsequent steps in the sequential analysis and considered all of Neider's alleged impairments in establishing Neider's RFC.  *See Maziarz v. Sec'y of Health & Human Servs.,* 837 F.2d 240, 244 (6th Cir.1987); Tr. 17-21.  Accordingly, the ALJ's failure to find severe impairments of chronic pain, stenosis and vascular insufficiency was not prejudicial and is not reversible error.  *Id.*

**D.      The ALJ's reliance on the VE's testimony was proper.**

Neider argues that the hypothetical posed to the VE by the ALJ was incomplete.[18]  Doc. 13, p. 18-19.  The basis of Neider's argument is that the ALJ was required to accept and incorporate all limitations or restrictions into the hypothetical.  "Hypothetical questions, however, need only incorporate those limitations which the ALJ has accepted as credible." *Parks v. Social Sec. Admin.*, 413 Fed. Appx. 856, 865 (6th Cir. 2011)(citing *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993)).  The ALJ's RFC, which is substantially similar to the first hypothetical, is based on substantial evidence.  Therefore, Neider's argument that it was improper for the ALJ to rely on the VE's testimony in support of his conclusions is without merit.

---

[17] Status post lumbar fusion surgery, knee problems, depression, diabetes, neuropathy, carpal tunnel syndrome, status post myocardial infarction, post traumatic stress disorder, depression and obesity.  Tr. 15.

[18] The ALJ posed two hypothetical questions to the VE.  Tr. 62-63.  Neider takes issue with the ALJ's reliance on the VE's response to the first hypothetical.  Doc. 13, p. 18-19.

**E.      The ALJ was not required to call a medical expert to determine whether Neider's impairments equaled a Listing.**

Contrary to Neider's position, an ALJ is not required to call a medical expert to determine medical equivalence under a Listing.  *See* 20 C.F.R. § 416.927(e)(iii)(providing administrative law judges with the authority to seek and consider medical expert opinions on the issue of whether a claimant's impairment equals a Listing, but not requiring a medical expert); 20 C.F.R. § 416.926(e)(stating that, at the administrative law judge level, responsibility for deciding medical equivalence rests with the administrative law judge); *see also  Davis v. Chater*, 1996 U.S. App. LEXIS 33614, *6 (6th Cir. 1996) (finding that, where an ALJ does not call a medical expert, a court is not precluded from finding that substantial evidence supports the ALJ's decision).  Here, there was sufficient evidence in the record for the ALJ to decide Neider's disability claim without expert medical testimony. Therefore the ALJ's decision not to solicit further expert medical testimony is not a basis to reverse the ALJ's decision.  *See Williams v. Callahan*, 1998 WL 344073, *4 n. 3 (6th Cir. 1998) (finding that, because the record contained the claimant's extensive medical history, the ALJ did not err in not soliciting expert medical testimony).

Neider relies on a statement by the ALJ that he had not heard of diabetes causing bowel end organ damage to support her position that the ALJ erred in not seeking a medical expert to testify as to whether said end organ damage would have an impact on equaling a Listing.  Doc. 13, p. 20.  During the hearing, Neider's counsel referenced Dr. Marina's records as being supportive of end organ damage.  Tr. 65-66.  Dr. Marina's letters reflect that the fact that he saw Neider because she had concerns that her food was not digesting and complaints of bowel problems.  Tr. 771-773.  His letters further show that, after two visits, it was his opinion that

Neider showed substantial improvement after taking Metamucil and no further diagnostic studies were necessary.  Tr. 771.

A review of the record demonstrates that the ALJ did not err in deciding not to call a medical expert to offer opinions as to medical equivalence and a review of the ALJ's decision shows that the ALJ completed a thorough and reasoned analysis under Step Three.  Tr. 15-17. Accordingly, the ALJ's decision not to call a medical expert is not a basis for reversal.

**F.     The ALJ's decision is supported by substantial evidence.**

Neider concludes her brief with an argument that, "[f]or the reasons set forth in this brief, the ALJ's decision is not based on substantial evidence as based upon plaintiff's severe exertional and non-exertional impairments, she has been disabled from at least July 24, 2007." Without more specific development of her final argument, it is deemed waived.  *See McPherson, 125 F.3d at 995–96*.  As shown above, the ALJ's decision is supported by substantial evidence. Therefore, Neider's argument, even if not waived for having been asserted in a perfunctory manner, is without merit.

### V.  Conclusion and Recommendation

For the foregoing reasons, it is the undersigned's recommendation that the Commissioner's decision be **AFFIRMED**.

Dated:  April 17, 2012

_____
Kathleen B. Burke
United States Magistrate Judge

### OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  See *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).